# EXHIBIT A



September 26, 2012

Captain Bryce Simpson

Dear Captain Bryce,

Thank you for choosing Yacht Path Marine Group™ for the transport of your 130' Westport. In order to ensure the safe and smooth transportation of your vessel, we kindly ask your attention to the following:

### 1. Contracts for transportation

Enclosed you will find the Booking Note and Terms and Conditions which form the Contract of Carriage for your yacht. Please carefully review these documents and sign the Booking Note, and initial the first five pages and sign and date the last page of the Terms and Conditions. If you have difficulty interpreting any of the language in either document please consult your maritime attorney for assistance.

The signed Booking Note and the six pages of the Terms and Conditions must be returned at least three weeks before the expected loading date. It is very important that you return the signed contracts as we need to reserve and allocate deck space on board the ocean vessel which will transport your yacht.

### 2. Marine Cargo Insurance

We would like to draw your attention to the issue of marine cargo insurance. Clause 7 of the Terms and Conditions provides that as the Yacht Owner, you are required to procure and maintain adequate marine cargo insurance covering your yacht throughout the duration of the Voyage. The marine hull and liability insurance that you likely maintain on your yacht is not an All Risks cargo insurance policy and is not likely to provide you with adequate protection in the event of loss or damage.

We kindly recommend that you contact Omni Risk Management for Cargo Insurance for your voyage.

Omni Risk Management
2148 Westlake Ave N
Seattle WA 98109
E-mail: jrooke@omniriskmanagement.com
bjohnson@omniriskmanagement.com
Office: 206-283-6595
Fax: 206-283-6593

### 3. Yacht Description

Please note that the Yacht Description information that you provide us is essential to safely load, stow and carry your yacht. The manner and location in which your yacht is loaded, where it is placed on deck, and how it is secured depend on the accuracy of this information. For further details regarding the information that we require, and the units of measurement to provide, please carefully review Clause 5 of the Terms and Conditions.

### 4. Customs and Security

The formalities for exporting and importing your yacht between different countries are your responsibility. However, to assist you with this task as much as possible, we will need to receive from you, in addition to the signed contracts and checklist, the following documents:

    a. A copy of the registration papers of your yacht.
    b. A certificate of ownership (e.g. copy of the purchase invoice).
    c. A copy of the yacht owners passport

Initials (Yacht Owner) *TSLS*

1 | Page



It is very likely that the Customs formalities will not have been completed when your yacht is discharged. You are therefore not allowed to sail until you have been authorized to do so by the appropriate authorities. Substantial penalties and fines may accrue for the yacht owner's failure to comply with Customs regulations or for an unauthorized departure without permission from either local authorities or the agent for the Carrying Vessel.

Additionally, it is imperative that you deliver the yacht to us for loading free of any and all arms, ammunition, stowaways, hazardous goods, contraband, alcohol, prescription drugs and illegal or illicit substances. Failure to comply with this requirement could result in the seizure and forfeiture of your yacht as well as the imposition of civil or criminal sanctions. For further information, please refer to Clause 6: Condition of the Yacht and Clause 19 of the Terms and Conditions.

## 5. Miscellaneous

We would also like to know in advance if you intend to be present during the loading of your yacht and whether you will bring your yacht alongside the ocean vessel yourself. Please note that loading is a complex process that involves issues of hydrostatics, trim and stability. As a result, loading your vessel may not occur upon your arrival and it is likely that a considerable wait will be necessary regardless of your arrival time.

In case you will not be present during the loading, please notify Yacht Path of the person who will be responsible for this task. You should also have an engine start-up manual or procedure available on board your yacht as well as the keys for the engines and a set of spare keys to give to Yacht Path's loadmaster. If keys and/or a starting manual are not present, the yacht owner's account will be charged for costs incurred to tow the yacht from the marina to the ocean vessel. This is necessary regardless of whether or not you bring your yacht alongside the vessel. The reason for this is because of Customs controls or other issues that may occur during transport.

Please make sure that your yacht is properly locked and that all of the yacht's loose parts inside and on deck are fully secured and battened down and thus ready for ocean carriage. No valuables whatsoever should be kept on board. Yacht Path International does not accept any liability for any missing items.

In addition, please make sure that you have sufficient fenders and dock lines on board the yacht.

**Please have your yacht as load ready and as light as possible. This means minimal fuel, potable and ballast water as reasonably possible. If your yacht is to be transported to/via an area or port where temperatures are frigid, please make sure that all systems on board have been winterized.**

You should be aware that in ocean shipping, delays may occur. Operating an ocean vessel is entirely different from operating an airliner, train or bus. We would strongly recommend that you do not book any flights/hotels until the loading of your yacht has actually taken place. Yacht Path does not accept responsibility for any losses and/or damages you may suffer as a result of delays of the vessel, including flight cancellations, hotel costs and/or marina fees.

We appreciate your understanding this.

We will contact you about two weeks before departure to discuss the latest details. Thank you in advance for your further information.

Best regards,

Yacht Path Marine Group

Jen Kowalewski

Initials (Yacht Owner) _____



| | 1. Date |
|---|---|
| **YACHTPATH** MARINE GROUP | September 26, 2012 |

| 2. Carrier | 3. Yacht Owner |
|---|---|
| Unity Shipping Lines Inc.<br>2860 W. State Rd 84, Suite 118<br>Ft. Lauderdale, FL 33312 | Dolphin Partner's Ltd.<br>6847 Cintas Blvd.<br>Mason OH 45040<br>United States |

| 4. Vessel's Name | 5. Sailing date (approx.)(See Terms and Conditions Clause 3) |
|---|---|
| To Be Nominated | On/about October 2012 |

| 6. Loading Port | 7. Discharging Port |
|---|---|
| Palma de Mallorca | Port Everglades |

**8. Yacht Description (see Terms and Conditions Clause 5)**

BOOKING NOTE NUMBER:

| | |
|---|---|
| Yacht Name: | "Stellar" |
| Size & Manufacture: | 130' Westport |
| Hull ID/ Official Number: | 1528 |
| LOA (overall length measured in feet): | 130' |
| BOA (extreme beam measured in feet): | 26' |
| Weight (actual weight in Metric Tons): | 168 tons |

**9. Freight Rate (see Terms and Conditions Clause 11)**

| | |
|---|---|
| Ocean Freight: | $113,088.00 *(Rate valid for pre-booking/pre-payment in full by September 27, 2012)* |
| Wharfage Charges: | $750.00 |
| Declared Value: | <Must Be Blank -- If Value Declared Add 15% to Freight rate> |
| Basis: | Water/Water |
| Includes: | Sea fastening/ Un-sea fastening |

All payments will be discount less, non-returnable and deemed fully earned upon execution of this Booking Note. Vessel and/or Yacht lost or not lost.

**10. Yacht owner's representatives at loading port**

**11. Additional Clauses, if any**

It's hereby agreed that this Contract of Carriage is subject to the Terms and Conditions of this Booking Note only. No previous agreements, representations or oral modifications are allowed unless expressly stated herein.

| | Signature (Yacht Owner) |
|---|---|
| Signature (Carrier) | *BSS* |
| Dennis Cummings | BRYCE SIMPSON |
| Print name (Carrier) | Print name (Yacht Owner) |
| As Authorized Sales Agent to Carrier only | The Yacht Owner or other party who executes this Agreement, warrants, that all statements and representations hereon, are true and correct, and that he is, or has been provided with the legal authority to contract on behalf of, and legally bind to this Agreement, the Person(s) or Entity(s) owning or otherwise entitled to possession of the Yacht. |



Initials (Yacht Owner) _BS_



# TERMS AND CONDITIONS

**The Booking Note and Terms and Conditions form the only evidence of the Contract of Carriage.**
**It is understood that no Bill of Lading will be issued. A non-negotiable cargo receipt is not evidence of the Contract of Carriage.**

### Clause 1: Definitions

1. **"Agreement"** collectively refers to the Booking Note and Terms and Conditions.
2. **"Carriage"** means the whole or any part of the transportation, loading, unloading, storing, handling and any and all other services whatsoever undertaken by the Carrier in relation to the Yacht.
3. **"Carrier"** means Yacht Path and Unity Shipping Lines™.
4. **"Contract of Carriage"** means these Terms and Conditions and Booking Note (whether physically attached hereto or not) which collectively form the Agreement.
5. **"Freight"** includes all charges payable, including dead freight, to the Carrier in accordance with this Contract of Carriage.
6. **"Marine Cargo Insurance"** means an *All Risks* insurance policy which indemnifies the Yacht Owner for damage to or loss of the Yacht from an insured peril while transported on deck in Ocean Carriage.
7. **"Ocean Carriage"** means the same as Port to Port Shipment.
8. **"Package"** is defined as the M/Y – S/Y _"Stellar".
9. **"Vessel"** means any water borne craft utilized for carriage under this Booking Note.
10. **"Voyage"** means the on deck ocean carriage from **Palma de Mallorca** to **Port Everglades**
11. **"Yacht"** means the boat (or other form of watercraft) and its contents being transported by Yacht Path and Unity Shipping™.
12. **"Yacht Owner"** includes an individual, corporation or other legal entity and shall include the shipper, receiver, consignee and/or owner of the Yacht to be carried, and the party executing this Agreement warrants and represents it is authorized to represent, bind, and act on behalf of any and all of the parties enumerated herein.

### Clause 2: Scope of Agreement

1. It is agreed between Yacht Path and Yacht Owner that the Carrier will charter space to the Yacht Owner on the deck of said Vessel designated in the attached booking note, or any other vessel that the Carrier may nominate as an alternative at its discretion.

2. The Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port listed on the Booking Note, load the Yacht under the direction of the Carrier, proceed to the discharge port listed on the Booking Note and discharge the Yacht under the direction of the Carrier.

3. The parties to this agreement fully recognize and understand that the Carriage of the Yacht is not an ordinary commercial shipment made in an ordinary course of trade. The unique characteristics and condition of the Yacht and the terms and conditions under which the Carriage of the Yacht is to be performed reasonably justify this special agreement.

4. All carriage under this Booking Note shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, 46 U.S.C. §§ 1300-1315 ("US COGSA"). Except as may be otherwise specifically provided herein, this law shall govern and have effect before the Yacht is loaded on and after it is discharged from the Vessel, whether the Yacht is carried on deck, between deck or under deck and throughout the entire time the Yacht is in the custody of the Carrier.

5. It is expressly understood and agreed that the Carrier shall not insure the Yacht and that is the sole duty and obligation of Yacht Owner to procure and maintain an adequate marine cargo insurance policy upon the Yacht for the duration of the Voyage.

### Clause 3: Delivery, Loading and Discharging

1. Carrier, in accordance with U.S. customs law, shall limit its business to the Carriage of said Yacht between loading port and discharging port. Carrier will not be directly involved with the delivery of Yacht to and from the loading berth or anchorage of the Carrier's vessel.

2. The sailing date contained in Box 6 of the Booking Note and in any other documentation or information provided or distributed by the Carrier or its agents is only an estimate of the approximate date that the Vessel will depart or arrive. The Carrier and its agents specifically do not warrant the date upon which the Yacht will be loaded or discharged. As such, Carrier, Vessel, and Yacht Owner agree that no claims whatsoever for loss of use or other consequential damages shall be valid or enforceable against Carrier or the Vessel. Yacht Owner specifically, and expressly, waives, by execution of the Booking Note, any claim of deviation due to delay, for loss of use (whether recreational or commercial) or consequential damages of any nature against the Carrier or Vessel arising out of a delay in the performance of this Agreement.

3. The Yacht, under the direction of the Carrier will be brought alongside the Vessel, free of any risk, liability and expense whatsoever of the Carrier. The Vessel shall be allowed to sail if the Yacht is not brought alongside as required and in time for loading.

4. The Carrier may provide identification decals or other identifying marks, at its sole discretion, which the Yacht Owner shall place on the Yacht's hull in such manner to indicate the Yacht's center of gravity and the specified positions for placement of the slings necessary to lift the Yacht.

5. The Yacht Owner, or his agent, consignee, contractor, subcontractor or such other receiver as may be appointed by the Yacht Owner, shall take delivery of the Yacht upon discharge as required by the Carrier and within reach of said gear or tackle, the failure of which to do so will entitle the Carrier to leave the Yacht at place of discharge at the sole expense of the Yacht Owner.

6. The Carrier shall provide the Yacht Owner with decals which the Yacht Owner shall place on the Yacht's hull in such manner to indicate the Yacht's center of gravity and the positions for placement of the slings necessary to lift the Yacht.



7. In the event that the Yacht Owner has failed to accurately provide the information as required by Clause 5, the Carrier shall be entitled to hire a diver, at the Yacht Owner's expense, to determine the best position for placement of slings to lift the Yacht.

8. The Master of the Vessel shall be entitled, without any obligation, to give instructions regarding loading, lashing, securing and discharging, whose instructions shall be followed by the Yacht Owner at the Yacht Owner's own risk and expense. The Master has the right to appoint a superintendent at the Carrier's expense, said superintendent shall be entitled to supervise loading, lashing and discharge operations.

9. The Yacht is subject to be lashed/unlashed and secured/unsecured as per Master's requirements upon the advice and consent of the Load Superintendent, but always free of any risk, liability, and expense whatsoever to the Carrier, Vessel and Master. Any time lost in waiting for loading/discharging, lashing/unlashing, securing/unsecuring shall be at Yacht Owner's sole expense.

10. In the event that the Yacht Owner, or his agent, consignee, contractor, subcontractor or such other designee is unable, or otherwise unavailable, to bring the Yacht alongside the Vessel for loading in accordance with the terms set forth herein, the Carrier reserves the right to retain a Captain, or other crew as necessary, to facilitate the movement of the Yacht alongside. If the Carrier exercises this option, the Yacht Owner agrees that the Carrier will be free of any risk, liability and expense associated with the performance of such operation.

11. Position of the Yacht on board the Vessel will be under the sole discretion of the Master of the Vessel and/or his agents, and the Yacht Owner specifically consents to above deck stowage at its own risk.

12. If the Carrier is to supply supports, cradles and/or cribbing as required, such provision is subject to the known particulars of the Yacht as described by the Yacht Owner. The Yacht Owner agrees that the Carrier will be free of any risk, liability and expense associated with the selection, procurement, placement and assembly of these items and any loss or damage of whatsoever nature and howsoever caused arising out of said supply will be for the sole account and risk of the Yacht Owner.

13. Loading and Discharging shall always take place at the discretion of the Master of the Vessel and at the expense of the Carrier unless otherwise indicated in the Booking Note.

14. The Carrier, Vessel, its servants, crew members, agents and subcontractors shall in every event be discharged from all liability whatsoever in respect to the delivery condition of the Yacht as regards to the effects of wind, weather, soot, dust or other contaminants and pollutants regardless of whether made by nature or man, borne by air or water, and shall bear no costs or expense attributable to the cleaning or repainting of the Yacht.

**Clause 4: Warranty**

The Yacht Owner or other party whose signature is affixed to the Booking Note warrants, that in agreeing to these Terms and Conditions, he is, or has been provided the legal authority to contract on behalf of, and legally bind to this Agreement, the Person(s) or Entity(s) owning or otherwise entitled to lawful possession of the Yacht.

**Clause 5: Description of the Yacht**

1. The Yacht Owner, upon booking, shall provide Carrier with an up-to-date description of the Yacht and its particulars. This means that the Yacht Owner must inform the Carrier of any and all changes made to the Yacht that deviate from the original manufacturer's specifications and accurately state the particulars of the Yacht as it will be delivered alongside for loading. The Yacht Owner must also disclose any other information which might affect the loading or stowage of the Yacht on board the Vessel.

2. The Yacht Owner, upon booking, is deemed to have guaranteed to the Carrier the accuracy of the Yacht's particulars, including, but not limited to, its overall length, extreme breadth, air draft, keel dimensions and weight.

3. It is expressly understood and agreed that the Carrier shall not be liable for any loss or damage resulting from the Yacht Owner's error, omission and misrepresentation in respect hereof and that the Yacht Owner shall indemnify the Carrier against all loss, damages, and expenses arising or resulting from inaccuracies or omissions in stating such particulars.

4. If such information is not provided, or provided inaccurately, the Carrier has the right to suspend its obligation of this agreement without releasing the Yacht Owner from his/her obligation under this agreement.

5. The Carrier shall not be liable for any loss, damages, or expenses resulting from the Yacht Owner's misrepresentation in respect hereof.

6. Failure to timely disclose information referred in the above paragraph shall (without prejudice to any other rights hereunder) release the Carrier from its obligation under this agreement.

**Clause 6: Condition of the Yacht**

1. The Yacht Owner warrants the Yacht is fit for ocean carriage and shall ensure that prior to loading, the Yacht is properly trimmed in accordance with the Carrier's instructions, and made as light as possible, unless the Carrier agrees in writing otherwise. Prior to lifting, the Yacht Owner will secure and/or remove any loose items on board the Yacht.

2. The Yacht Owner agrees to allow any surveyor, employee and/or agent of the Carrier to board the Yacht prior to and during the lifting operation for the purpose of conducting an inspection to prepare a "Yacht Condition Report". This is a report that will identify the condition of the Yacht prior to commencement of the lifting operation.

Initials (Yacht Owner) JSLS

5 | Page



3. The Yacht Owner shall deliver the Yacht free of any and all arms, ammunition, stowaways, hazardous goods, contraband, alcohol, prescription drugs and illegal substances. The Carrier reserves the right to inspect the Yacht prior to departure, and if any contraband is found will discharge it and notify the authorities. In respect to these aforementioned items the Carrier maintains a zero tolerance policy.

4. Under this agreement the Yacht Owner will indemnify, defend and hold harmless the Carrier against any consequences of failure to comply with the aforementioned policy.

5. The Yacht Owner warrants that all lashing and securing points on the Yacht are suitable to lash and secure the Yacht and that the hull is free from any material damage or defect which might affect its suitability for on deck ocean carriage.

6. Yacht Owner warrants and represents that the Yacht is, and shall remain at all times relevant hereto, free of all liens, detentions or arrests.

7. In the event that the Yacht is encumbered with an arrest or otherwise detained, the Carrier shall be relieved of any and all liability to the Yacht Owner resulting from said arrest or detention.

8. The Yacht Owner shall defend, indemnify and hold both the Carrier and Vessel harmless from any liability resulting from the arrest, attachment or detention of the Yacht notwithstanding the lawfulness of the arrest or detention.

**Clause 7: Liability and Insurance**

1. It is expressly understood and agreed that the Carrier shall have the benefit of all limitations to, and exonerations from, liability accorded to vessel owners, carriers, and charterers pursuant to any applicable statute or rule of law for the time being in force, and the same benefits apply regardless of the form of the Agreement. No part of this Agreement is intended as a Personal Contract.

2. The Yacht Owner consents to the on deck carriage of the Yacht at the sole risk of the Yacht Owner. Neither the Carrier nor the Vessel shall be liable for any loss, damage, or liability of any nature no matter how caused, including, but not limited to, any unseaworthiness or want of fitness. Under no circumstances shall the Carrier be held liable for delay, loss of use, incidental or consequential damages.

3. Throughout the duration of this agreement, the Yacht Owner shall procure and maintain adequate marine cargo insurance, covering the risks the Yacht Owner has assumed under this agreement, naming the Carrier, its agents and subcontractors, as additional assureds and waiving all rights of subrogation against them.

4. It is expressly understood that the Yacht Owner is aware that standard all-risk or named peril marine insurance coverage may not insure against damage or loss occurring during ocean carriage of the Yacht and that the Yacht Owner shall be liable for all claims, losses, costs, damages, attorneys' fees, and expenses of every kind and nature resulting from its failure to procure and maintain adequate Marine Cargo Insurance cover.

5. It is expressly understood and agreed that the Carrier shall not insure the Yacht nor act as an agent for the procurement of said marine cargo insurance policy.

6. The parties agree that the Yacht, her engine(s), masts, anchors, cables, chains, rigging, tackle, apparel, equipment, and furnishings thereto appertaining, and any contents associated therewith tendered by Yacht Owner for shipping shall be considered the Package or customary freight unit as referred to in US COGSA and that in no event shall the Carrier be or become liable for any loss or damage to or in connection with the transportation of the goods shipped by the Yacht Owner in any amount exceeding USD $500 per Yacht, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the Yacht Owner before shipment and inserted in the Booking Note.

7. In the case where the value of the Yacht has been declared, the quoted freight rate shall be increased by 15% of the declared value. The Carrier will obtain insurance for its own account covering any liability it may incur with respect to loss and damage to the goods shipped by Yacht Owner in the amount of USD$500 per yacht and shall not in any event be liable for any greater damages, unless the Yacht Owner has declared and paid for the declared value.

8. The Carrier shall not be responsible for any loss or damage sustained by the Yacht Owner, or its charterers, customers, consignee agent or otherwise, through delay in the delivery of the Yacht however caused.

9. The Yacht Owner hereby waives any claim for consequential damages whatsoever and agrees to defend, indemnify and hold harmless the Carrier, Vessel and any of their agents or servants from and against any and all claims, losses, costs, damages, attorneys' fees, and expenses of every kind and nature arising from said delay. In the event the Carrier is nonetheless held liable for delay, such liability shall be limited to a maximum of 5% of the freight paid or payable under the Booking Note.

10. The Yacht Owner shall further be liable for all expenses (including wreck removal), official fines or consequences which are incurred pursuant to this Agreement or by the nature of the Yacht or any contents of the Yacht or leakages or oil spills from the Yacht, as well as for all fines and/or losses which the Carrier, Vessel or Yacht may incur through non-observance of Customs and/or import-export regulations.

**Clause 8: Liberties Clause**

1. The Carrier may at any time and without notice to the Yacht Owner:
a.) use any means of transport whatsoever;
  b.) transfer the Yacht from one conveyance to another, including transshipment or carrying the same on a Vessel other than the Vessel named on the Booking Note or by any other means of transport whatsoever and even though transshipment or forwarding of the Yacht may not have been contemplated for herein;
  c.) sail without pilots, proceed via any route (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to, return to and stay at any port or place whatsoever (including the Port of Loading herein provided) once or more often, and in any order in or out of the route or in a contrary direction to or beyond the Port of Discharge once or more often;

Initials (Yacht Owner)_JSLS_



d.) Load and unload the Yacht at any place or port (whether or not any such port is named on the reverse hereof as the Port of Loading or Port of Discharge) and store the Yacht at any such port or place for the account of others than the Yacht Owner from places en route or not en route;

e.) Comply with the orders or recommendations given by any government or authority or any Person or body purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions;

2. The liberties set out in this clause may be invoked by the Carrier for any purpose whatsoever whether or not connected with the Carriage of Goods, including, but not limited to, loading or unloading other yachts, cargo or goods, bunkering or embarking or disembarking any person(s), undergoing repairs, drydocking, towing or being towed, assisting other vessels, making trial trips, and adjusting instruments.

3. Anything done or not done in accordance with this clause or arising there from shall be deemed within the contractual Carriage and shall not be deemed or otherwise held a deviation.

### Clause 9: Unanticipated Circumstances

1. In the event of an unanticipated circumstance, such as a change in regulations, orders or directions from the vessel owner or operator, orders or directions by underwriters for the vessel operator or owner or governmental authorities, strike, war, warlike operations, terrorist activities, Acts of God, blockades, lockouts, inability to load the Yacht due to Vessel's capabilities, condition or configuration, inadequacy or unavailability of cranes on board or on shore, difficulties to enter any port for any reason, or other difficulties or any event that may influence the Voyage before loading, Carrier shall at its sole discretion have the option of canceling this Booking Note, whereupon any prepaid freight shall be reimbursed to Yacht Owner and each party shall be released from any obligation under this Contract of Carriage.

2. The Carrier shall also have sole discretion to furnish a substitute for the Vessel named in the Booking Note, conditioned upon such substitute vessel being suitable for the contracted transportation. If any unanticipated circumstance as referred to herein may arise after the Yacht has been received by Carrier for execution of this Contract of Carriage, Carrier shall have liberty to return the Yacht to the Yacht Owner at the place the Yacht was received or any other convenient place. The Yacht Owner shall be informed of such event as soon as possible and after discharge any party shall be released from any obligation under this Booking Note, except for any non-paid freight, charges or expenses otherwise payable to the Carrier by the Yacht Owner.

### Clause 10: General

1. The Carrier does not undertake that the Yacht or any documents relating thereto shall arrive or be available at any point or place at any stage during the Carriage or at the Port of Discharge or the Place of Delivery at any particular time or to meet any particular license, permission, sale contract or credit of the Yacht Owner or any market or recreational or commercial use of the Yacht and the Carrier shall under no circumstances whatsoever and howsoever arising be liable for any direct, indirect or consequential loss or damage caused by delay. Yacht Owner warrants that it understands that any date provided by the Carrier for the loading, carriage and discharge of the Yacht is only an estimate due to the unique nature of ocean marine transportation and that no liability for delay will accrue to the carrier. If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by such alleged delay, such liability shall in no event exceed a maximum of 5% of the freight paid or payable under the Booking Note.

2. Save as is otherwise provided herein, the Carrier shall under no circumstances be liable for direct or indirect or consequential loss or damage arising from any cause whatsoever or for loss of profits, rent or charter hire.

3. It is expressly agreed that under no circumstances whatsoever shall the Carrier be liable for costs and expenses associated with transportation, lodging, and meals incurred by the Yacht Owner or his agents and subcontractors.

4. Once the Yacht has been received by the Carrier for loading, the Yacht Owner shall not be entitled to impede, delay, suspend or stop or otherwise interfere with the Carrier's intended manner of performance of the Carriage or the exercise of the liberties conferred by this Agreement nor to instruct or require delivery of the Yacht at any place other than the designated Port of Discharge or Place of Delivery named on the Booking Note or such other Port or Place selected by the Carrier in the exercise of the liberties herein, for any reason whatsoever, including, but not limited to, the exercise of any right of stoppage in transit. The Yacht Owner shall indemnify the Carrier against all claims, liabilities, loss, damages, costs, delay, attorney's fees and/or expenses caused to the Carrier, his subcontractors, servants or agents or to any other cargo or to the owner of such cargo during the Carriage arising or resulting from any stoppage (whether temporary or permanent) in the Carriage of Goods whether at the request of the Yacht Owner, or in consequence of any breach by the Yacht Owner or in consequence of any dispute whatsoever in respect of the Yacht involving any one or more party defined herein as the Yacht Owner as between themselves or with any third party.

5. These Terms and Conditions shall govern the responsibility of the Carrier in connection with or arising out of the supplying of any equipment related to the lifting, stowage or transportation of the Yacht.

### Clause 11: Freight

1. Yacht Owner will effect a 20 (twenty) percent down-payment on the freight payable under this Agreement into Carrier's bank upon execution of this agreement. The remaining 80 (eighty) percent will be due not less than 30 days prior to the departure date indicated on the Booking Note unless otherwise agreed to in writing by the Carrier or its Authorized Sales Agent.

2. All payments will be without discount, not subject to refund or return and are deemed fully earned upon execution of this Agreement by the Yacht Owner, regardless of loss of Vessel and/or Yacht. Should the final installment not have been received 10 days prior to the sailing date indicated on the Booking Note, unless otherwise agreed to in writing by the Carrier or its Authorized Sales Agent, the Carrier to have the option to cancel the agreement without prejudice to the Yacht Owner's obligation to pay all sums due hereunder.

Initials (Yacht Owner) _TSJS_



3. Any dues, duties, taxes and charges which under any denomination which may be levied on any basis such as amount of freight, weight or cargo or tonnage of the Yacht shall be paid by the Yacht Owner. The Carrier shall pay dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.

4. It is understood that the Carrier will not insure the Yacht or its value and that it is the sole responsibility of the Yacht Owner to procure and maintain an adequate Marine Cargo Insurance Policy.

5. The Yacht Owner and its customer, consignee, agent, and any other party entitled to possession of the Yacht, shall be liable, jointly and severally, for payment of freight, dead freight, charges, fines, general average contributions, indemnities, compensations, indemnifications or damages under this Booking Note.

### Clause 12: Lien

The Carrier shall have a lien on the Yacht and any documents relating thereto for all sums payable to the Carrier under this Agreement including, but not limited to, freight, dead freight, claims for damages, general average contributions, and salvage to whomsoever due. The Carrier shall also have a lien against the Yacht Owner on the Yacht and any document relating thereto for all sums due from him to the Carrier under this Agreement. The Carrier may exercise its lien at any time or place in its sole discretion, whether the contractual carriage is completed or not. In any event any lien shall extend to cover the costs of recovering any sums due (including attorney's fees), and for that purpose the Carrier is entitled to utilize self-help and shall have the right to sell the Yacht by public auction or private treaty, without notice to the Yacht Owner. The Carrier's lien is non-possessory and shall survive delivery of the Yacht.

### Clause 13: New Both to Blame Collision Clause

If the Vessel comes into collision with another vessel as a result of the negligence and fault of both ships, the Yacht Owner will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying vessel and her owners to the owners of said goods and set off, recouped, or recovered by the other or non-carrying vessel or her owners as part of their claim against the Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any vessels or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

### Clause 14: General Average

General Average shall be stated and adjusted in Amsterdam, Netherlands, according to the York-Antwerp Rules of 1994 and any subsequent modifications thereof. The Yacht Owner's contribution to General Average shall be payable even when such average is the result of a fault, neglect or error in navigation or management of the Carrier or the Vessel's master, crew or pilot.

### Clause 15: New Jason Clause

1. In the event of accident, danger or damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not held responsible by statute, contract or otherwise, Yacht Owner and/or Yacht shall contribute with the Carrier and/or Vessel in General Average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo.

2. If a salving ship is owned or operated by the Carrier or the Vessel's operators, salvage shall be paid for as fully as if the salving ship(s) belonged to strangers. Such deposit as the Carrier, vessel or their agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the Yacht Owner and/or Yacht before delivery.

### Clause 16: Permits and Licenses

The Yacht Owner shall procure all necessary permits, licenses and customs forms as required with respect to the Carriage of the Yacht (loading and discharging), including, but not limited to the payment of all customs duties and fees. The Carrier may advance these duties and fees at its sole discretion, said advancement not to constitute a waiver of the Carrier's right to seek reimbursement from Yacht Owner for said advancement and without releasing the Yacht Owner of its responsibility. Any delay or time lost occasioned by the Vessel due to the Yacht Owner's failure to comply with this Clause are to be paid by the Yacht Owner at the demurrage rate.

### Clause 17: Riders

1. The Carrier has the sole and exclusive right, subject to the provisions of the master charter party and the consent of the Vessel owner and operator, to allow the Yacht Owner to nominate one person, the "Rider," to accompany the Yacht during Ocean Carriage, in which case the Yacht Owner agrees to indemnify, defend, and hold harmless the Carrier and Vessel from and against any claim, liability, loss, damage, costs, and expense whatsoever which the Carrier, Vessel, its servants, agents or independent contractors, and its or their employees may incur or suffer arising out of any act, neglect, omission, or default by that Rider. It is understood, acknowledged and agreed that the Rider is an employee or representative of the Yacht Owner, not of the Carrier or Vessel. The Yacht Owner warrants that the Rider will perform his or her duties and behave in a workmanlike, responsible, and professional manner.

2. In the event that the Yacht Owner shall choose to nominate a Rider during the period of Ocean Carriage, both the Yacht Owner and Rider shall review and execute the relevant Indemnification Agreement. If the Carrier agrees to allow an additional Rider(s) he must complete an additional Indemnification Agreement and be noted on the Insurance Declaration.

3. It is understood and acknowledged that the Master of the Vessel has final discretion to allow a Rider to accompany a Yacht during Ocean Carriage and Carrier shall not be responsible in any manner whatsoever for any damages that may result from the failure to provide carriage to the Rider for whatever reason.

4. The Yacht Owner shall be liable for any and all damages, including physical damage, personal injury and all economic losses to third parties, or to the rider(s) himself, caused by or contributed to by the Rider(s) designated by the Yacht Owner.

5. The Yacht Owner undertakes, and is required, to procure and maintain an insurance policy to cover the risks that it has assumed in this Clause, in the amount of not less than USD $2,500,000.00, evidence of which shall be submitted not less than seven days before the approximate sailing date, unless otherwise agreed to in

Initials (Yacht Owner) JSLS

8 | Page



writing by the Carrier or its Authorized Sales Agent. Failure to provide such proof of insurance obligates the Carrier to deny passage to the Rider(s) or procure force placed insurance at Yacht Owner's sole expense and cost.

### Clause 18: Supply of Water and Electricity

Subject to availability, and at the sole discretion of Vessel and her Master, fresh water and electricity may be available during the Voyage. In such event, the provision of fresh water and electricity shall be for the sole account and risk of the Yacht Owner and the Yacht Owner is responsible for providing approved cable-end connectors, hoses and other umbilical attachments and shall provide qualified personnel to effect the connection and disconnection or usage of available hoses or mains. It is expressly understood and agreed that the Vessel's crew may not be engaged for such work and that the Carrier shall in no case be liable for the consequences of any electrical power failures or variations, nor for the suspension or quality of fresh water.

### Clause 19: Security of Ships and Port Facilities

The Carrier is required to comply with the International Code for the Security of Ships and Port Facilities and all relevant parts of Chapter XI of the International Safety of Life at Sea Convention (SOLAS). To assist in compliance therewith, the Yacht Owner shall provide the Carrier with all requested contact details, citizenship information and any other information the Carrier may require. Any loss, damage, expense, delay or additional cost incurred as a result of the Yacht Owner's failure to comply with this Clause, including, but not limited to, security guards, launches, tugs, port security fees, private security costs, taxes and/or expenses shall be for the account of the Yacht Owner.

### Clause 20: Variation of the Contract

No agent or servant of the Carrier (including every independent contractor from time to time employed by the Carrier) shall have the power to waive or vary any of the Terms and Conditions of this Agreement unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier or its Authorized Sales Agent.

### Clause 21: Jurisdiction, Applicable Law and Time for Suit

1. Any claim or dispute arising from this Booking Note which cannot be settled amicably shall be decided according to the laws of the United Kingdom, except as provided elsewhere herein, and in the English High Court of Justice, to the exclusive jurisdiction of which the Carrier and Yacht Owner submit themselves. Whenever US COGSA is at issue this Agreement is to be governed by United States law and the United States District Court for the Central District of California is to have exclusive jurisdiction to hear all disputes in respect thereof.

2. The Carrier shall in any event be discharged from all liability whatsoever in respect of the Yacht under the Booking Note, unless suit is commenced within 1 (one) year after actual delivery of the Yacht or the date upon which delivery of the Yacht was to have originally been effected as designated on the Booking Note.

3. Written notice of claims for loss of or damage to the Yacht occurring or presumed to have occurred while in the custody of the Carrier must be provided in writing to the Carrier at the port of discharge before or at the time of removal of the Yacht by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery in good order by Carrier. If such loss or damage is not discernible from visual inspection, the Carrier must be provided written notice within three days of delivery.

### Clause 22: Exemptions and Immunities of Servants and Agents

No servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Yacht Owner for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course and scope of employment and, but without prejudice to the generality of the foregoing provisions in this clause, every exemption, limitation, condition and liberty herein contained and every right, exception from liability, defense and immunity of whatsoever nature applicable to the Carrier, or to which the Carrier is entitled hereunder, shall also be available and shall extend to protect every such servant or agent of the Carrier acting as aforesaid and for the purpose of all the foregoing provisions of this clause, the Carrier is, or shall be deemed to be, acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his agents or servants (including independent contractors) and all such persons shall to this extent be or be deemed to be parties to the Agreement.

### Clause 23: Validity

If any term of this Agreement is held to be null or void for any reason whatsoever, the remainder of this Agreement will remain in full force and effect.

Yacht Owner* (Authorized Agent) signature __BS__ Date __9/27/12__

Name (Printed) __BRYCE SIMPSON__

* The Yacht Owner, or other party who executes this Agreement, warrants, that all statements and disclosures contained on the Booking Note are true and correct, and that he is, or has been provided the legal authority to contract on behalf of, and legally bind to this Agreement, the Person(s) or Entity(s) owning or otherwise entitled to lawful possession of the Yacht.

Initials (Yacht Owner) __BS__



## Banking information

Please find below the banking information for wire transactions.

WIRE INSTRUCTIONS:

UNITY SHIPPING LINES, INC.

2860 W. State Rd 84, Suite 118
Ft. Lauderdale, FL 33312


Unity Shipping Inc. In-Coming Wire Account
BANK:

BANK OF AMERICA, N.A.

2525 PGA Blvd
Palm Beach Gardens, FL 33410
ACCOUNT # ▇▇▇▇▇▇▇▇

A/B/A ROUTING # ▇▇▇▇▇

SWIFT CODE: ▇▇▇▇▇



# CHECKLIST

**Please use this checklist as a guide for paperwork which Yacht Path will need prior to loading your yacht.**

The original **Booking Note** with your signature and the date. Please make sure that the name and address on the Booking Note are identical to the information contained on the Yacht's Ownership and Official Documents. If not, please make corrections to the Booking Note to match.

The original **Terms and Conditions** with your initials on all pages, and sign and date the last page.

**Yacht Registry and Ownership Information.** A copy of your yacht's Official Registry and Ownership Information is required in most foreign countries for customs clearance. If the yacht has not yet been registered following your purchase of it then a copy of the previous owners' Official Registry documents along with your new bill of sale will be acceptable.

**Proof of Marine Cargo Insurance** Please remit a copy of your marine cargo insurance certificate which covers the risks of on deck ocean carriage and names Yacht Path International™ and Unity Shipping Lines™ as additional assureds, if you will be securing a cargo insurance policy through another insurance company.

The **Power of Attorney** form for Mexican customs, if applicable.

Copy of **Yacht Owner's passport** for customs.

Yacht Owner will effect a 20 (twenty) percent **down-payment** on the Freight payable under this Agreement into Carrier's bank upon execution of this agreement. The remaining 80 (eighty) percent will be due no later than 30 days prior to the departure date indicated on the Booking Note unless otherwise agreed to in writing by the Carrier.

**Updates** on your yacht's Estimated Time of Arrival will be sent to up to three e-mail addresses. Please let us know if you do not monitor your e-mail on a regular basis so that we can make alternate arrangements.

## PLEASE FAX ALL DOCUMENTS TO 561-455-9135

Initials (Yacht Owner) _BLS_

11 | Page